IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **GLODELMIS PEREZ ORTIZ,** ) <br> ) <br> *Plaintiff*, ) <br> ) <br> vs. ) <br> ) <br> **THE CERVANTES GROUP, INC.** a for- ) <br> profit corporation in San Juan, Puerto Rico, ) <br> **THE CERVANTES GROUP, LLC,** a for- ) <br> profit corporation in Chicago, Illinois, ) <br> **JOANNA M. BAUZA GONZALEZ,** an ) <br> individual , and **TIMOTHY B. MULLEN,** ) <br> an individual, ) <br> ) <br> *Defendants*. ) <br> ) | Civ. Action No. <br><br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW, Plaintiff GLODELMIS PEREZ ORTIZ, by and through undersigned counsel, and brings this action against THE CERVANTES GROUP, INC., THE CERVANTES GROUP, LLC, JOANNA M. BAUZA GONZALEZ, and TIMOTHY B. MULLEN, and very respectfully alleges, solicits, and prays, as follows:

**I.    PARTIES**

1.  Plaintiff GLODELMIS PEREZ ORTIZ ("Plaintiff") was and is a resident of San Juan, Puerto Rico, who is over the age of eighteen (18) years of age, and is *sui juris* in all respects.[1] Her address is: Urb Paseo del Parque, #53 Calle Parque del Oriente, San Juan, PR 00926.

---

[1] Plaintiff maintains dual residency in San Juan, Puerto Rico and Orlando, Florida. Her Florida address is 4072 Waterview Loop, Winter Park, FL 32792.

1

2. Upon information and belief, The Cervantes Group, Inc. ("Cervantes Inc.") is and has been a for-profit corporation incorporated under the laws of the Commonwealth of Puerto Rico, authorized to do business in and doing business in San Juan, Puerto Rico, with its principal place of business located at 1225 Ave. Juan Ponce de Leon, VIG Tower, Suite 1101, San Juan, Puerto Rico 00907.[2]

3. Upon information and belief, The Cervantes Group, LLC ("Cervantes LLC") is and has been a for-profit corporation incorporated under the laws of the Illinois, authorized to do business in and doing business in Puerto Rico, and deriving substantial profit from its business in Puerto Rico, with its principal place of business located at 401 North Michigan Avenue, Suite 1200, Chicago, Illinois 60611.

4. Upon information and belief, Joanna M. Bauza Gonzalez ("Bauza") was and is a resident of San Juan, Puerto Rico, who is over the age of eighteen (18) years of age, and is *sui juris* in all respects.[3] Her address is: 1106 Calle Piccioni, San Juan, Puerto Rico 00907. Bauza is the President and co-founder of The Cervantes Group.

5. Upon information and belief, Timothy B. Mullen ("Mullen") was and is a resident of San Juan, Puerto Rico, who is over the age of eighteen (18) years of age, and is *sui juris* in all respects.[4] His address is: 1106 Calle Piccioni, San Juan, Puerto Rico 00907. Mullen is the co-founder and managing partner of The Cervantes Group.

---

[2] The Cervantes Group | Home

[3] Bauza maintains dual residency in San Juan, Puerto Rico and Chicago, Illinois. Her Illinois address is 564 West Arlington Place, Chicago, Illinois 60614.

[4] Mullen maintains dual residency in San Juan, Puerto Rico and Chicago, Illinois. His Illinois address is 564 West Arlington Place, Chicago, Illinois 60614.

6. Cervantes, Gonzalez, and Mullen, collectively, are hereinafter referred to as "Defendants."

## II.    JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under 42 U.S.C.A. § 2000e-2(a)(1) and 42 U.S.C.A. § 2000e-3(a), which prohibit unlawful employment practices and retaliation under federal law.

8. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district, and some or all of the parties reside and/or do business therein.

## III.    STATEMENT OF FACTS

9. On or about January 2, 2023, Plaintiff accepted an offer of employment from Cervantes for the position of Senior Product Manager, Healthcare Practice Manager, Global PMO, with a start date of January 2, 2023.

10. Plaintiff's total compensation for this position was $105,400, consisting of $88,400 salary, $7,000 travel allowance, and $10,000 in bonuses. Plaintiff's employment included benefits such as 100% employee medical insurance coverage, 27 days of paid leave, and a reimbursement for training and gym membership, which was subject to management approval.

11. On or about February 18, 2025, Cervantes notified Plaintiff of her promotion to Vice President of Global Operations, effective January 1, 2025.

12. Plaintiff's new annual salary as Vice President of Global Operations was $122,720, with payroll effective February 21, 2025. Plaintiff's compensation package

included an approved yearly car allowance of up to $10,800, a tech package up to reimbursement of $3,000, a performance bonus of $24,000, and a quarterly incentive structure of 1% of all global billing.

13. Plaintiff's role as Vice President of Global Operations was based in the Orlando, Florida and San Juan, Puerto Rico and her geographic area of responsibility was the Caribbean Region. Plaintiff's responsibilities included developing and implementing HR strategies, advising business leaders on HR matters, optimizing organizational effectiveness, driving talent management initiatives, managing expanding operations, negotiating with vendors, collaborating with local businesses, attending industry events, and mentoring direct reports.

14. Plaintiff had worked for Cervantes for over five years prior to her promotion to Vice President of Global Operations.

15. After Plaintiff's promotion, several of her core duties and responsibilities were removed and reassigned without justification and delegated to a male employee, Chuks Ochia, who previously reported to Plaintiff.

16. Plaintiff was not provided with any reasons or explanations for the removal of her duties or the reassignment of her responsibilities.

17. Plaintiff's removed duties included project oversight for international operations, client escalations, and global team leadership reporting.

18. Plaintiff had been performing these duties successfully since her promotion, and there were no documented performance issues or business justification for the changes.

19. No other Vice President or male leader at Cervantes had their responsibilities removed or reassigned in this manner.

20. Plaintiff's male counter-part who had previously had to report to her, Chuks Ochia, had less experience and held a lower-level position and was treated significantly better than Plaintiff.

21. Plaintiff was then forced by Defendants to report to her prior subordinate in a blatant attempt to have her resign based on the demotion. Its attendant humiliation and degradation which made an hostile workplace environment virtually intolerable.

22. Other employees in similar or lower-level positions did not experience the same instability, public criticism, or removal of responsibilities as Plaintiff.

23. Plaintiff's supervisor, who is also the company co-founder and managing partner (Mullen), frequently changed instructions and expectations, often contradicting previous guidance, which created confusion and stress for Plaintiff, thus being responsible for the hostile workplace environment.

24. Plaintiff's supervisor criticized her performance on tasks that had previously been removed from her duties, by email, text, and in meetings, causing humiliation and reputational harm.

25. Plaintiff's role and responsibilities were changed without a new job description, explanation, or evaluation, leaving Plaintiff uncertain about expectations.

26. Plaintiff made formal requests to Human Resources Director Ashley Otero for an updated job description and clarification of her role, and also complaining about the hostile workplace environment that Ochia's actions were creating at the direction of Mullen, but she received no response.

27. Ashley Otero was aware of Plaintiff's requests for clarification and the repeated changes of instructions and the hostile workplace environment created by Plaintiff's supervisor, Ochia.

28. On or about October 8, 2025, Plaintiff experienced additional adverse employment actions, including the removal of duties and reassignment of tasks to a male subordinate as retaliation for her ongoing complaints to HR.

29. On or about October 17, 2025, Plaintiff submitted an initial inquiry to the EEOC regarding sex discrimination and pay disparity.

30. On or about October 23, 2025, Plaintiff submitted an EEOC inquiry alleging workplace harassment by her direct supervisor, who is also the company co-founder, Mullen.

31. Plaintiff alleged that the combined actions of her supervisor created a hostile and intimidating work environment that affected her mental and emotional well-being.

32. On December 8, 2025, shortly after the EEOC notification, as retaliation for Plaintiff's EEOC Complaint, Plaintiff's supervisor Chuks Ochia began copying Human Resources on routine work emails that were previously handled directly between Plaintiff and Ochia. To Plaintiff's knowledge and belief, no employee in her similar position as a Vice-President had their emails cc'ed to HR.

33. After December 8, 2025, Chuks Ochia, in further retaliation for Plaintiff's EEOC Complaint, inexplicably began including employee Louis Del Rios in meetings that were previously conducted one-on-one with Plaintiff.

34. On December 15, 2025, Plaintiff participated in a call with Chuks Ochia and Louis Del Rios to discuss next steps for a project, during which Ochia agreed to send a follow-up document.

35. On December 16, 2025, Plaintiff emailed Ochia and copied Del Rios to remind him about the follow-up document.

36. Approximately one hour later, Ochia called Plaintiff, yelled at her in an aggressive and abusive tone, questioned why she had copied Louis Del Rios, and stated he did not have to send anything. During this call, Ochia spoke in a hostile and disrespectful manner, causing Plaintiff severe emotional distress, causing her to shake and cry.

37. Immediately after the call, Plaintiff emailed Human Resources explaining the incident and informed them that she needed to step away for the remainder of the day due to the emotional impact and gross disrespect caused by the ongoing hostile workplace environment.

38. Following this incident, and as a direct result of same, Plaintiff experienced worsening symptoms related to her Multiple Sclerosis condition.

39. That same week, Plaintiff's neurologist determined that she needed to take medical leave and rest for two weeks due to the stress and impact on her health being caused by her work environment.

40. When Joanna Bauza, President and Co-Founder of Cervantes, received Plaintiff's HR complaint regarding the December 16 incident, she informed Plaintiff that an external investigator would review the situation and that Plaintiff would be contacted after returning from medical leave.

41. Plaintiff returned from medical leave on January 5, 2026, and continued reporting to Chuks Ochia.

42. On January 7, 2026, Joanna Bauza contacted Plaintiff to schedule an interview of her version of the events with the company's external investigator Adriana Moreno, which took place on January 8, 2026.

43. Plaintiff was never informed of the results of the investigation, no follow-up discussion occurred, and no action was taken to address the hostile workplace environment.

44. On January 9, 2026, during a meeting in front of Louis Del Rios, Chuks Ochia instructed Plaintiff that she must send him every email for review before sharing it with anyone in the company. This requirement had not existed previously and significantly restricted Plaintiff's ability to perform her role. No other similarly situated male counter-part was subject to this restriction.

45. On January 23, 2026, Joanna Bauza requested that Plaintiff attend a Teams meeting on January 26, 2026, to discuss AMEX expense reports. The AMEX expense reports had previously been requested by email and were not due until January 31, 2026. Plaintiff coordinated and attended the January 26, 2026, meeting as requested.

46. On January 26, 2026, when the meeting began, Joanna Bauza and Ashley Otero (HR) joined the call. The actual purpose of the call was to terminate Plaintiff's employment for her ongoing complaint.

47. During the January 26, 2026, meeting, Joanna Bauza stated that Plaintiff would receive a Non-Compete Release Letter and that the company would pay all

8

outstanding payments owed to Plaintiff, including pending payroll and other compensation, by February 16, 2026.

48. As of March 4, 2026, the company still owes Plaintiff $3,600 related to Puerto Rico payroll, which had been agreed upon in connection with her Global Operations VP contract. They also owe her payment for all benefits that had been contracted for and unilaterally amended by Defendants.

49. On February 19, 2026, Plaintiff received an email from Joanna Bauza that included an invoice demanding payment for alleged unauthorized AMEX expenses from 2025 and a settlement agreement requiring Plaintiff to release the company from legal claims in exchange for paying the money owed. The foregoing is a coercive tactic as Defendants are well aware that there are no unauthorized expenditures and no money is owed to them. Simply, this is a transparent attempt by Defendants to obtain a release for their wrongdoing by asserting financial leverage on Plaintiff.

50. Plaintiff has not and will not sign the settlement agreement.

51. Plaintiff received a shipping label to return the company laptop.

52. As of March 4, 2026, the company still has not paid the money owed to Plaintiff, and Plaintiff has not returned the laptop because she is concerned about evidence on the laptop but she will return the laptop once a protocol is established for preserving the evidence.

53. On February 19, 2026, Cervantes sent Plaintiff a response letter rejecting her allegation that any Puerto Rico payroll for January remained unpaid in the amount of $3,600, stating that the amount referenced was an allowance conditioned upon the continuity of the MMM contract, which was cancelled in December 2025.

54. Cervantes rejected Plaintiff's request for a written release or waiver of any restrictive post-employment covenants, including as to the MMM customer.

55. Cervantes rejected Plaintiff's request to purchase the company laptop and to have any amount deducted from final pay or liquidation, stating the laptop remains company property.

56. On February 18, 2026, Cervantes issued Invoice 701 Exp to Plaintiff, requesting payment of $7,242.00 for alleged unauthorized expenses incurred without proper approval under company procedures.

57. On December 5, 2025, the EEOC issued Plaintiff a Notice of Right to Sue regarding Charge No. 510-2026-00463, stating that the EEOC would not proceed further with its investigation and that Plaintiff must file any lawsuit within 90 days of receipt of the notice.

58. All conditions precedent to the filing of this suit have been performed, excused, or waived.

IV. **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Gender Discrimination, Hostile Working Environment, Retaliation)**

59. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 58 above as if fully set forth herein.

60. Defendants are employers subject to Title VII, and Plaintiff was employed by Defendants during the relevant period. Plaintiff is a member of a protected class and was qualified for her position as Vice President of Global Operations. Plaintiff was subjected to adverse employment actions, including the removal of core duties, reassignment of responsibilities to a male subordinate, public criticism, and ultimately

termination, because of her gender and the surrounding circumstances giving rise to an inference of discrimination based on sex, in violation of 42 U.S.C.A. § 2000e-2(a)(1).

61. By reason of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION
### (Gender Discrimination, Hostile Working Environment, Retaliation)

62. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 58 above as if fully set forth herein.

63. Plaintiff engaged in protected activity under Title VII by making internal complaints of discrimination with HR and by filing a charge with the EEOC.

64. Defendants took materially adverse employment actions against Plaintiff, including but not limited to restricting her job duties, subjecting her to public criticism, requiring her to report to a former subordinate, and terminating her employment.

65. There is a causal connection between Plaintiff's protected activity and the adverse employment actions taken against her, as evidenced by the temporal proximity between her complaints and EEOC charge and the subsequent adverse actions, as well as Defendants' knowledge of her protected activity.

66. By reason of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## THIRD CAUSE OF ACTION
### (Violation of Constitutional Rights)
### (Article II, Sections 1, 3, 8, 16 and 20 of Puerto Rico's Constitution)

67. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 58 above as if fully set forth herein.

68. Defendants have further violated Plaintiff's rights under Article II, Sections 1, 8, 16 and 20 of Puerto Rico's Constitution by violating her protected rights to privacy, dignity, reputation, safety and health at the workplace and discriminating against her on the basis of her gender.

69. Plaintiff is entitled to compensatory damages and back pay. Plaintiff has suffered considerable economic and severe emotional damages as a result of Defendants' willful conduct, including the discrimination she was subjected to as well as retaliation.

70. By reason of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

### FOURTH CAUSE OF ACTION
### (Violation to Puerto Rico Act Nos. 115, 100, 69, and 3; Arts. 1536, 1540 of Puerto Rico's Civil Code)

71. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 58 above as if fully set forth herein.

72. Defendants have violated Plaintiff's rights secured under Puerto Rico Acts Nos. 115, 100, 69, 3 and Articles 1536 and 1540 of Puerto Rico's Civil Code. Defendants have discriminated against Plaintiff on account of her gender, and further retaliated against her because she engaged in statutorily protected conduct.

73. By reason of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

### FIFTH CAUSE OF ACTION
### (Wrongful Termination)

74. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 58 above as if fully set forth herein.

75. Defendants' actions constitute a termination of employment without just cause.

76. Defendant is liable to Plaintiff pursuant to Puerto Rico Law No. 80, *the Unjust Dismissal Act* (as Amended by Law No. 4 on Jan. 26, 2017), for an amount equal to three (3) months of salary plus benefits, as defined in the law, and two (2) additional weeks of compensation, based on her highest earning in any thirty-day period within the three years prior to the Plaintiff's dismissal. Therefore, the sum amount of severance pay under Law 80 is approximately Thirty-Five Thousand, Four Hundred Dollars ($35,400.00).

77. By reason of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## SIXTH CAUSE OF ACTION
**(Hostile Work Environment and Harassment under Puerto Rico Law 90)**

78. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 58 above as if fully set forth herein.

79. Puerto Rico Law 90 prohibits workplace harassment (acoso laboral) and hostile work environment, including a pattern of abusive, humiliating, or intimidating conduct not tied to protected-class status, when such conduct is severe or pervasive, not reasonably related to legitimate business interests, and creates an intimidating, hostile, or offensive working environment, or unreasonably interferes with an employee's work performance.

80. At all relevant times, Defendants were Plaintiff's employer within the meaning of Puerto Rico Law 90.

81. Shortly following Plaintiff's promotion and continuing up to and through her termination, Plaintiff was subjected to repeated and unwelcome workplace harassment

by Defendants and their employees/agents, including but not limited to: (a) derogatory and humiliating comments directed at Plaintiff in front of coworkers; (b) unreasonable and arbitrary changes to work assignments and schedules designed to isolate Plaintiff; (c) public reprimands, ridicule, and threats of unwarranted discipline; and (d) exclusion from meetings and resources necessary to perform assigned duties.

82. The foregoing conduct was not reasonably related to any legitimate business interest, was severe or pervasive, and unreasonably interfered with Plaintiff's work performance by causing anxiety, humiliation, and loss of professional opportunities, and by materially altering the terms and conditions of Plaintiff's employment.

83. Plaintiff complained about the harassment to Defendant's management and/or Human Resources, providing sufficient detail to put Defendants on notice of the hostile work environment, yet Defendants failed to take prompt, effective remedial action and, instead, allowed the harassment to continue.

84. Following Plaintiff's complaints, Defendant and its agents further subjected Plaintiff to retaliatory harassment and adverse treatment, thereby aggravating the hostile work environment and contravening Puerto Rico Law 90's anti-retaliation protections.

85. As a direct and proximate result of Defendant's violation of Puerto Rico Law 90, Plaintiff suffered damages, including emotional distress, mental anguish, loss of dignity, reputational harm in the workplace, and economic losses, as well as other compensable harms under the statute.

86. Defendant's conduct was willful and/or undertaken with reckless disregard for Plaintiff's rights under Puerto Rico Law 90, warranting the full measure of statutory relief and any enhanced remedies authorized by law.

87. Plaintiff has satisfied, or is excused from, any procedural or administrative prerequisites applicable to claims under Puerto Rico Law 90, including any notice requirements, and this Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a) as it forms part of the same case or controversy as Plaintiff's federal claims.

88. By reason of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## V. DEMAND FOR JURY TRIAL

89. Plaintiff demands a trial by jury as to all claims and issues alleged herein.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff GLODELMIS PEREZ ORTIZ respectfully requests that this Court:

1. Declare that The Cervantes Group, Inc., Joanna Bauza Gonzalez, and Timothy B. Mullen violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a), by subjecting her to unlawful discrimination and retaliation in employment on the basis of sex and for engaging in protected activity.
2. Enjoin The Cervantes Group, Inc., Joanna Bauza Gonzalez, and Timothy B. Mullen from engaging in further acts of discrimination or retaliation against Plaintiff or any other employee on the basis of sex or protected activity under Title VII.
3. Award Plaintiff reinstatement to her former position as Vice President of Global Operations, or, in the alternative, front pay in lieu of reinstatement, against The Cervantes Group, Inc., Joanna Bauza Gonzalez, and Timothy B. Mullen.
4. Award Plaintiff back pay, including lost wages, salary, bonuses, incentive compensation, and lost benefits, in an amount to be determined at trial, against The Cervantes Group, Inc., Joanna Bauza Gonzalez, and Timothy B. Mullen.

5. Award Plaintiff compensatory damages for emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life, in an amount to be determined at trial, against The Cervantes Group, Inc., Joanna Bauza Gonzalez, and Timothy B. Mullen.

6. Award Plaintiff prejudgment and post-judgment interest as permitted by law.

7. Award Plaintiff her reasonable attorneys' fees, expert witness fees, and costs of suit pursuant to 42 U.S.C. § 2000e-5(k).

8. Award Plaintiff a minimum amount for the compensatory damages requested in the amount of no less than one million dollars.

9. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted on this 5th day of March, 2026

        **SANCHEZ-MEDINA, GONZALEZ, LAGE, GOMEZ & MACHADO, LLP**
CARLOS A. GARCIA PEREZ
Florida Bar No. 106895
GUSTAVO D. LAGE, ESQ.
Florida Bar No. 972551
201 Alhambra Circle, Suite 1205
Coral Gables, Florida, 33134
Tel.: (305) 377-1000
Primary E-Mail Addresses:
cgarciaperez@smgqlaw.com;
glage@smgqlaw.com

By: *s/ Carlos A. Garcia Perez*
     CARLOS A. GARCIA PEREZ